IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 5 2002

Michael N. Milby
Clerk of Court

GILBERT LOPEZ                        *
                                     *
VS.                                  *        CIVIL ACTION NO. B-02-25
                                     *
AVENUE A, INC.                       *

# DEFENDANT AVENUE A, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

**March 25, 2002**

**TABLE OF CONTENTS**

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............ 1

II.  STATEMENT OF FACTS .................. ........................................................... 1

III.  STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ........... 3

IV.  SUMMARY OF THE ARGUMENT ................................................................. 3

V.  ARGUMENT

    A.  A Preponderance of the Evidence Shows that the Amount
        in Controversy Exceeds $75,000 ................................................. 4

    B.  Avenue A's Notice of Removal Was Timely Filed ............................ 11

VI.  CONCLUSION ............................................................................... 12

VII.  CERTIFICATE OF SERVICE ...... ............................................................ 13

## TABLE OF AUTHORITIES

**FEDERAL CASES:**

*Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) .............................. 6

*Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992) ..................................... 11

*Corley v. Southwestern Bell Tel. Co.*, 924 F. Supp. 782 (E.D. Tex. 1996) ..................... 7

*Cowan v. Combined Ins. Co. of Am.*, 67 F. Supp.2d 1312, 1316–17
    (M.D. Ala. 1999) ................................................................................ 9

*De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412–13 (5th Cir. 1995) ............................. 4

*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) ........................... 4

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
    276 F.3d 720, 723 (5th Cir. 2002) ..................................................... 3

*McKnight v. Ill. Cent. R.R.*, 967 F. Supp. 182, 184 (E.D. La. 1997) ......................... 9

*Ray v. State Farm Lloyds*, No. 3:98–CV–1288–G, 1999 U.S. Dist.
    WL 151667 (N.D. Tex. Mar. 10, 1999) ............................................... 7

**TEXAS CASES**

*Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986) ............... 4

*Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938 (Tex. 1990) ....................... 4

*Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 945
    (Tex. App.—Beumont 1985, writ ref. n.r.e.) ...................................... 5

**FEDERAL STATUTES:**

28 U.S.C. § 1332(a) ..................................................................................... 3
28 U.S.C. § 1332(a)(1) ................................................................................ 3
28 U.S.C. § 1446(b) .................................................................................. 10

**TEXAS RULES:**

Tex. R. Civ. P. 42(c)(2) .............................................................................................9

Tex. R. of Civ. P. 47(b) ............................................................................................4

Tex. R. Civ. P. 92. ....................................................................................................2


RESTATEMENT TORTS 2d § 652H (1977) ..............................................................5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 5 2002

Michael N. Milby
Clerk of Court

GILBERT LOPEZ                *
                                     *
VS.                            *        **CIVIL ACTION NO. B-02-25**
                                       *
AVENUE A, INC.            *

## DEFENDANT AVENUE A, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

### I.

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff Gilbert Lopez commenced the present action by filing an Original Petition in the 404th Judicial District Court for Cameron County, Texas on February 13, 2001, and serving it upon defendant Avenue A, Inc. ("Avenue A") on February 27, 2001. Avenue A removed the action to this Court on February 12, 2002. Plaintiff filed a motion to remand on March 4, 2002. Avenue A files this brief in response.

### II.

### STATEMENT OF FACTS

Plaintiff brings suit on behalf of himself and a purported class of similarly situated individuals in the State of Texas. Petition at 1, 4. Plaintiff alleges that Avenue A surreptitiously monitored individuals' use of the Internet World Wide Web and thereby created comprehensive profiles of such Internet users. *Id.* at 1–2. On the basis of this alleged conduct, plaintiff asserts two causes of action—common law invasion of privacy and unjust enrichment. *Id.* at 16–17.

Avenue A answered the Petition on April 2, 2001, by generally denying plaintiff's allegations. *See* Tex. R. Civ. P. 92. On January 7, 2002, Avenue A served plaintiff with discovery requests, asking plaintiff to admit or deny several statements regarding the amount in controversy. Plaintiff responded on February 7, 2002.[1] Plaintiff admitted the following:

- "Plaintiff and the members of the class he seeks to represent make no claims in this lawsuit for exemplary or punitive damages, as alleged in Plaintiff's Original Petition §1.1." (Request for Admission No. 1.)

- "Plaintiff and the members of the class he seeks to represent do not seek in excess of $75,000 in total damages per individual, exclusive of interest and costs." (Request for Admission No. 3.)

- "Plaintiff and the members of the class he seeks to represent will not amend their Petition to seek in excess of $75,000 in total damages per individual, exclusive of interest and costs." (Request for Admission No. 4.)

Plaintiff, however, denied the following:

- "Plaintiff and the members of the class he seeks to represent will not amend their Petition to include claims for exemplary or punitive damages." (Request for Admission No. 2.)

- "Plaintiff and the members of the class he seeks to represent will not accept a jury award exceeding $75,000 in total damages per individual, exclusive of interest and costs." (Request for Admission No. 5.)

- "Plaintiff and the members of the class he seeks to represent irrevocably stipulate to accept no more than $75,000 in total damages per individual in any trial of this case or any settlement, exclusive of interest and costs." (Request for Admission No. 6.)

In light of the responses, Avenue A filed a notice of removal on February 12, 2002.

---

[1] Subsequent to Avenue A filing its Answer, no activity took place in the case for approximately five months. On August 28, 2001, the district court *sua sponte* issued a Drop Docket Notice, notifying the parties that the case would be dismissed if the court did not reinstate the action pursuant to a motion for reinstatement within 30 days. *See* Clerk's Entries. Plaintiff filed such a motion on August 31, 2001. *Id.* The case again remained inactive until January 7, 2002, when Avenue A served plaintiff with the Requests for Admission. Approximately one week later, the district court issued another Drop Docket Notice. *See* Drop Docket Notice (Tex. Dist. Ct. Cameron County Jan. 15, 2002). Plaintiff, accordingly, filed another motion to reinstate on January 23, 2002. *See* Clerk's Entries.

## III.

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

1.    Whether the amount in controversy exceeds $75,000.

2.    Whether the notice of removal was timely filed.

## IV.

## SUMMARY OF THE ARGUMENT

Avenue A has demonstrated by a preponderance of the evidence that the amount in controversy exceeds the diversity jurisdiction amount. Given the law governing damages for invasion of privacy, the nature of plaintiff's allegations make it likely (even if not certain) that a jury would award an amount exceeding $75,000 per individual should plaintiff fully prove his case. That likelihood, together with plaintiff's attempt to plead damages below the federal jurisdictional amount in violation of the Texas Rules of Civil Procedure and his refusal to admit that he and the purported class members would refuse a jury award exceeding $75,000 per individual, satisfies Avenue A's burden for removal. Moreover, because Avenue A filed its notice of removal within 30 days of receiving plaintiff's discovery responses (the event first establishing removability), the notice of removal was timely filed.

## V.

## ARGUMENT

### A.    A Preponderance of the Evidence Shows that the Amount in Controversy Exceeds $75,000

Plaintiff concedes complete diversity, *see* 28 U.S.C. § 1332(a)(1), so the sole question is whether the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Plaintiff alleges in the Petition that the claims he and the purported class assert are each less than $75,000. Petition at 1. Plaintiff correctly notes that, ordinarily, the court should look to the state court complaint for the amount in controversy. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). That rule is inapplicable here, however.

3

Plaintiff's damages allegation contravenes Texas law, which generally prohibits parties from pleading a specific amount of damages in the complaint. Texas Rule of Civil Procedure 47(b) states that a pleading shall contain "in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court." *See also Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986) ("Rule 47 precludes a party, except by response to a special exception, from pleading unliquidated damages in a specific amount."). Plaintiff cannot rely on an allegation that violates state law to prove that his claim is for less than the federal jurisdictional minimum. *See, e.g., De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412–13 (5th Cir. 1995). More importantly, even when plaintiffs are permitted to plead a specific damage amount in response to a special exception, *see* Tex. R. Civ. P. 47, Texas law does not limit the jury award to the amount pled in the original ).[2] complaint. *See, e.g., Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938 (Tex. 1990Fifth Circuit precedent makes clear that, given Texas law, the state court complaint cannot be determinative of the amount in controversy. *See Manguno*, 276 F.3d at 722–23; *De Aguilar*, 47 F.3d at 1410.

Under the law of the Fifth Circuit, the removing defendant in these circumstances must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Manguno*, 276 F.3d at 723; *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *De Aguilar*, 47 F.3d at 1411–12. The nature of plaintiff's allegations, when combined with plaintiff's discovery responses, satisfies this burden.

Should plaintiff and the purported class members prevail on their privacy claim, they would be entitled to recover damages for (1) the harm to the specific interest in privacy resulting from the invasion, (2) mental distress proved to have been suffered if it is the kind that normally results from such an invasion, and (3) special damage of which the invasion is a legal cause. *See* Restatement Torts 2d § 652H (1977). As Texas courts recognize, "[t]here is

---

[2] In *Greenhalgh*, the plaintiff was permitted to amend his complaint to plead a specific damage amount only because defendant had filed a special exception. *See Service Lloyds Ins. Co. v. Greenhalgh*, 771 S.W.2d 688, 697 (Tex. App. 1989), *rev'd*, 787 S.W.2d 938 (Tex. 1990).

no certain standard to measure damages of [mental distress] as they cannot be proven with certainty and accuracy. Therefore, the question of damages, if not excessive, is properly left for the jury to determine. There are no objective guidelines by which [courts] can measure the money equivalent of mental distress." *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 945 (Tex. App.-- Beaumont 1985, writ ref.'d n.r.e.).

Under this standard, a jury likely could return a verdict greater than $75,000 per individual should plaintiff prove the type of privacy violation he alleges.[3] Plaintiff maintains that "Avenue A surreptitiously monitored the web 'surfing' habits of millions of unwitting users." Petition at 1. Plaintiff further alleges that Avenue A, through such monitoring, collected information that plaintiff and members of the purported class consider to be sensitive, personal, and private. *Id.* at 7–8. This information allegedly includes Web sites visited, items purchased, financial details, sexual preferences, health conditions, names, addresses, email addresses, and telephone numbers. *Id.* at 8. Plaintiff claims that Avenue A used this information "to develop enormous commercial databases containing very detailed user profiles," *id.*, and used such profiles for purposes of Internet advertising. Thus, plaintiff alleges that Avenue A "disclosed, exploited, misappropriated and/or engaged in widespread commercial usage of [this] private and sensitive information." *Id.* at 16. Finally, plaintiff claims that he and the class members have each been subjected to repeated privacy violations, rather than simply one isolated incident each. *Id.* at 16. In addition to compensatory damages for these alleged violations, plaintiff seeks disgorgement of monies unlawfully obtained (*i.e.*, Avenue A's profits) and injunctive relief. *Id.* at 18–19. Each form of relief would only further increase the amount in controversy in this case.

---

[3] Avenue A disputes plaintiff's allegations. *See* Defendant Avenue A, Inc.'s Original Answer and Jury Demand (generally denying Petition's allegations). Avenue A also reserves the right to dispute plaintiff's damages should this case proceed to trial, and does not admit that plaintiff should recover any damages. The important question for removal purposes, however, is the amount to which plaintiff and the purported class members could be entitled should they prove their case as alleged, *i.e.*, the amount in controversy.

Nevertheless, Avenue A recognizes that the Petition, standing alone, may not satisfy the applicable preponderance-of-the-evidence standard. Rather, it is plaintiff's responses to Avenue A's Requests for Admission—when combined with the Petition—that demonstrate by a preponderance of the evidence that the amount in controversy here exceeds $75,000.

In *De Aguilar*, the Fifth Circuit considered Texas Rule 47 and the potential it creates for plaintiffs to manipulate rules of pleading to both avoid federal diversity jurisdiction and ultimately recover damage awards greater than $75,000 in state court. *See* 47 F.3d at 1409–13. Referring to Rule 47 and similar rules elsewhere, the Fifth Circuit explained:

> These new rules have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith.

*De Aguilar*, 47 F.3d at 1410. The court therefore devised specific rules "to avoid the sort of manipulation" that occurred in that case. *Id.* at 1411; *see also Manguno*, 276 F.3d at 724 ("This Court has expressed its concern about the possibility of 'abusive manipulation by plaintiffs ....' " (quoting *De Aguilar*, 47 F.3d at 1410)). The Fifth Circuit explained that specific rules were necessary "to protect defendants from plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand." *De Aguilar*, 47 F.3d at 1411. The court noted that previously it had "spoken adamantly of 'preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.' " *Id.* (quoting *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985)).

Accordingly, the court established the following rule for the circumstances created by Texas Rule 47: If a defendant can show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, then, in order for the case to be remanded to

state court, the plaintiff must show that as a matter of law "it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." *De Aguilar*, 47 F.3d at 1411. In a State like Texas, the Fifth Circuit stated that a plaintiff could satisfy this burden by filing, with the complaint, a binding stipulation that he will not accept damages exceeding $75,000. *Id.* at 1412.

Avenue A does not invoke the *De Aguilar* legal certainty rule here. Avenue A admits that it is uncertain whether the nature of relief sought in the Petition could, standing alone, show by a preponderance of the evidence the removability of this action. Instead, Avenue A relies on *De Aguilar* to demonstrate the evidentiary significance of plaintiff's responses to Avenue A's Requests for Admission. As district courts in the Fifth Circuit have recognized, evidence that a plaintiff may be practicing the type of manipulation described in *De Aguilar* can help satisfy the defendant's preponderance-of-the-evidence burden for establishing federal diversity jurisdiction. *See, e.g., Ray v. State Farm Lloyds*, No. 3:98–CV–1288–G, 1999 U.S. Dist. 1999 WL 151667 (N.D. Tex. Mar. 10, 1999); *Corley v. Southwestern Bell Tel. Co.*, 924 F. Supp. 782 (E.D. Tex. 1996).

The *Corley* decision is particularly relevant here. There, the plaintiffs filed a petition in Texas state court disclaiming actual damages over $1,000 yet claiming punitive damages. 924 F. Supp. at 783. Eight months later, the defendant served discovery requests asking the plaintiffs to admit that they were seeking punitive damages exceeding $50,000, the minimum amount for federal diversity jurisdiction at the time. *Id.* The plaintiffs responded by filing an amended petition, deleting the punitive damages claim. *Id.* The plaintiffs also filed a stipulation stating that they (but not absent class members) limited their damages to less than $50,000. *Id.* The plaintiffs then answered the discovery request by denying that they were seeking a punitive damages award or an amount exceeding $50,000 at that time. *Id.* The defendant thereafter filed a notice of removal. *Id.*

The district court found that the defendant had established by a preponderance of the evidence that the amount in controversy exceeded $50,000. *See* 924 F. Supp. at 786. To

reach this finding, the court relied significantly on the plaintiffs' conduct after the defendant served its requests for admissions:  "The responses to the requests for admissions, the Stipulation and the Second Amended Petition are all evidence that proves by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *Id.* at 786.  Paying particular attention to the Fifth Circuit's concerns in *De Aguilar*, the court concluded that the plaintiffs' pleadings and discovery demonstrated "that but for Plaintiffs' manipulation of the pleadings Plaintiffs would be seeking damages in excess of $50,000." *Corley*, 924 F. Supp. at 787.

Avenue A respectfully submits that the present case presents the same situation.  The nature of the relief sought in the Petition makes it likely that plaintiff and the purported class members, should they prove their allegations, would recover more than $75,000 per individual.  Plaintiff, perhaps recognizing this likelihood, has attempted to manipulate its pleadings in violation of the Texas Rules of Civil Procedure to avoid federal jurisdiction.  The allegation of damages in plaintiff's Petition, however, has no legally binding effect in Texas.

Plaintiff's denials of Requests for Admission Nos. 2, 5, and 6 are important.  There, plaintiff refuses to admit that he and the class members will not amend their petition to add claims for exemplary or punitive damages, refuses to admit that they will not accept a jury award of greater than $75,000 per individual, and refuses to admit that they will stipulate to accept no more than $75,000 per individual.  The denials demonstrate that plaintiff recognizes that an award greater than $75,000 would be justified and that plaintiff is prepared to seek and accept such an award once the one-year bar on removal for diversity jurisdiction passes.  The denials—when combined with the likelihood of a recovery greater than $75,000 per individual, plaintiff's pleading damages below $75,000 in violation of Rule 47(b), and plaintiff's attempt to perpetuate that pleading fiction in his admissions of Requests 3 and 4—demonstrate the same level of manipulation found in the *Corley* decision.

Plaintiff disputes the significance of his denials, arguing that the responses were ethically dictated due to the potential effect on absent class members.  This argument fails.

8

First, as plaintiff's Petition and responses to other discovery requests reveal, plaintiff has no problem binding absent class members in other respects.  Plaintiff's allegation of damages in the Petition and his admissions of Requests for Admission 3 and 4 all pertain to plaintiff *and the members of the class he seeks to represent. See* Petition at 1; Plaintiff's Responses to Defendant's First Set of Requests for Admission Nos. 3, 4.

Second, plaintiff does not explain how admitting Requests 2, 5, and 6 could, in any event, bind a *potential* class member who ultimately chooses to seek monetary damages exceeding $75,000 per individual.  If potential class members determine that their interests are not served by plaintiff's decisions as to how to handle this case, the class members can opt out. *See* Tex. R. Civ. P. 42(c)(2); *see also Cowan v. Combined Ins. Co. of Am.*, 67 F. Supp.2d 1312, 1316–17 (M.D. Ala. 1999) (plaintiff may waive punitive damages and limit compensatory damages on behalf of putative class because potential class members can opt out).  Plaintiff's apparent fear that a potential class member who does opt out could somehow be bound by plaintiff's admissions or stipulations is unfounded.  If the potential class member opts out, the person will for all practical purposes never have been a party to this action.  Under elementary principles of due process, the individual cannot be bound by the admissions or stipulations plaintiff makes in this action.[4]

---

[4] The Fifth Circuit in *Manguno* did raise the question whether a class representative can waive the right of putative class members to attorneys fees without those persons' authorization. *See* 276 F.3d at 724.  The court did not, however, definitively answer the question. *See id.*  For the reasons set forth in the text above, Avenue A respectfully submits that a class representative can enter such a stipulation, and that any potential class member who disagrees with the decision may exercise his or her right to opt out.  In any event, the *De Aguilar* decision, which the *Manguno* court cited as authority on this point, addressed an entirely different issue—whether plaintiffs could bind the legal heirs of estates for whom the plaintiffs were not legal representatives. *See* 47 F.3d at 1413.  The question did not concern class action procedures at all. *See id.* at 1413–15.  Finally, to the extent plaintiff seeks authority on this point, Avenue A refers the Court to *McKnight v. Ill. Cent. R.R.*, 967 F. Supp. 182, 184 (E.D. La. 1997), where class representatives did stipulate that no plaintiff or class member sustained damages over $50,000.

**B.    Avenue A's Notice of Removal Was Timely Filed**

Title 28 U.S.C. § 1446(b) provides, as relevant here:

> If the case stated by the initial pleading is not removable, a notice of
> removal may be filed within thirty days after receipt by the defendant,
> through service or otherwise, of a copy of an amended pleading,
> motion, order or other paper from which it may first be ascertained that
> the case is one which is or has become removable, except that a case
> may not be removed on the basis of jurisdiction conferred by section
> 1332 of this title more than 1 year after commencement of the action.

Avenue A's notice of removal was timely filed under § 1446(b).  The removability of this action first became ascertainable on February 7, 2002, when plaintiff served his responses to Avenue A's Requests for Admission.  Avenue A properly filed its notice of removal on February 12, 2002, within 30 days of receiving plaintiff's responses.

Plaintiff nevertheless contends that, per *De Aguilar*, the removability of the case should have been ascertainable at the time of the filing of the Petition because plaintiff did not file an accompanying binding stipulation on damages.  As explained above, however, Avenue A does not rely on the rule of the *De Aguilar* decision establishing circumstances in which a plaintiff must prove to a legal certainty the amount of damages recoverable.  Indeed, Avenue A admits that at the time the Petition was filed, Avenue A likely could not have met the preponderance-of-the-evidence standard for removability.  Plaintiff therefore would not have been required to prove nonremovability to a legal certainty per *De Aguilar*.  In short, "the case stated by the initial pleading [was] not removable." § 1446(b).  The action only became removable once plaintiff served its discovery responses, thereby providing sufficient evidentiary support of the manipulation discussed in decisions like *De Aguilar* and *Corley*.

To the extent any doubt remains on the timeliness issue, the *Corley* decision should put it to rest.  There, the plaintiff made an argument similar to plaintiff's contention here.  The defendant in *Corley*, like Avenue A, relied on the evidentiary significance of plaintiff's discovery responses to establish removability.  The district court rejected the plaintiff's

10

§ 1446(b) argument, holding that the defendant's notice of removal was timely because it was filed within thirty days of receiving the plaintiff's discovery responses. *See Corley*, 924 F. Supp. at 784–85 (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992)).

## VI.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiff's Motion to Remand.

DATED: March 25, 2002.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

By: _____
Eduardo Roberto Rodriguez
Attorney-in-Charge
State Bar No. 17144000
Federal Admissions No. 1944
Mitchell C. Chaney
State Bar No. 04107500
Federal Admissions No. 1918
R. Patrick Rodriguez
State Bar No. 24002861
Federal Admissions No. 22949
ATTORNEYS FOR DEFENDANT, AVENUE A, INC.

OF COUNSEL:
Noah A. Levine
Washington State Bar No. 31275
David J. Burman
Washington State Bar No. 10611
Elizabeth A. Alaniz
Washington State Bar No. 21096
PERKINS COIE, L.L.P. - SEATTLE
1201 Third Avenue
Seattle, Washington 98101
(206) 583-8888
Fax (206) 583-8500

11

## CERTIFICATE OF SERVICE

I hereby certify tha on this the ___25___ day of March, 2002, a true and correct copy of Defendant's Response to Plaintiff's Motion to Remand was served on all counsel of reoord by forwarding same, via U.S. Certified Mail, Return Receipt Requeste, U. S. Regular Mail, Facsimile and/or Hand delivery, to wit:

      Michael R. Cowen
      Michael R. Cowen, P.C.
      765 East 7th Street, Suite A
      Brownsville, Texas 78520
      Attorneys for Plaintiff

      E. Clayton Lowe, Jr.
      Burr & Forman, L.L.P.
      Post Office Box 830719
      Birmingham, Alabama 35283-0719
      Attorneys for Plaintiff

                            _____
                                  R. Patrick Rodriguez